# M O N T A G E

## SUBCONTRACT AGREEMENT
### Montage, Inc.

THIS SUBCONTRACT, made this __1st__ day of __April__, 2005, by and between Montage, Inc. (hereinafter "MONTAGE") and __Time Line Construction, Corp.__ (hereinafter "Subcontractor/ TLC").

### WITNESSETH:

**WHEREAS, MONTAGE** and __DC Sports and Entertainment Commisson__ (hereinafter :Owner", Owner, as used herein, includes all Owner's representatives, including as appropriate, the architect), have entered into a Contract for the implementation of __Fort Greble Baseball Field Renovation__ ( herein after known as "Project"), and .

**WHEREAS, MONTAGE** desires to subcontract to furnish all labor, materials, and equipment to renovate the Fort Greble baseball/football field.

**NOW, THEREFORE,** in consideration of the mutual agreements herein expressed, the parties do contract as follows:

## 1. SCOPE OF WORK

Subcontractor shall furnish all labor, materials, and equipment to mobilize to site, till under the old playing field areas, install new infield baseball infield drains, till existing ground, add topsoil, fertilizers, install new infield skinned area, re-grade entire playing field area for proper drainage, relocate the baseball field to new dimensions as shown on drawings, install sod, (Fescue), to cover the entire baseball, football, softball fields as per drawings, water as necessary to ensure proper germination, connect new infield drain line to existing storm drain # 13, seed and straw any disturbed areas outside of the field renovation area, cleanup and dispose of all debris generated by the work of TLC, and demobilize after work has been inspected, approved, and accepted. Daily reports will be generated and supplied to Montage, Inc. and a daily basis. All work will be as per plans. Omitted items are outfield drains, irrigation system, disposal of existing sod, SEC, build up of subsoils, top soil to be minimum 2". Materials may be unclassified.

## 2. CONTRACT PRICE

MONTAGE agrees to pay Subcontractor for the satisfactory performance of Subcontractor's work, subject to additions and deductions by change order of other Subcontract provisions, **ONE HUNDRED FORTY THOUSAND DOLLARS, ( $ 140,000.00 )**, in accordance with section 4.

## 3. PERFORMANCE AND PAYMENT BONDS

3.1 <u>Bonds</u>. No bond will be required.

## 4. PAYMENT

4.1 <u>Progress Payments</u>. Progress payments shall be due Subcontractor in the amount of 100% of the work in place which MONTAGE and Owner have approved and for which Owner has paid MONTAGE. For the purpose of determining progress payments, Subcontractor shall furnish MONTAGE, before its first application for progress payment, a <u>Schedule of Values</u> satisfactory to MONTAGE. If MONTAGE disapproves of Subcontractor's Schedule of Values, MONTAGE shall establish a reasonable breakdown which shall be the payment basis. A two party check will be issued for the infield mix and all sod for the project.

4.2 <u>Stored Materials</u>. Unless otherwise provided, Subcontractor shall be paid its progress payments in the amount of 90% of the value of stored materials MONTAGE and Owner have approved and for which Owner has paid MONTAGE. Approval of payment for such stored items on or off site shall be based on submission by Subcontractor of evidence satisfactory to MONTAGE and Owner to protect Owner's and MONTAGE's interest in such materials and equipment, including transport to the site.

*[handwritten: a single payment after Acceptance of work by Client]*

4.3 <u>Time of Payment</u>. Subcontractor shall submit progress payment applications in a form satisfactory to MONTAGE no later that the 5th day of each payment period for work performed up to and including the last day of the previous payment period, indicating work completed and, to the extent allowed under Section 4.2, materials suitable stored during the preceding payment period. Notwithstanding any provisions, inconsistencies or ambiguities in MONTAGE's contract with the Owner, progress payments shall be made by MONTAGE to Subcontractor following MONTAGE's receipt of payment from the owner for such Subcontractor's work. However, it is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent, upon MONTAGE receiving Contract payments, including retainer, from the Owner.

4.4 <u>Failure of Subcontractor to Make Payment</u>. Subcontractor shall ensure that all its subcontractors, employees, and suppliers are paid all amounts due in connection with this Subcontract. MONTAGE may withhold any progress payment until Subcontractor submits evidence satisfactory to MONTAGE that all amounts due in connection with this Subcontract have been paid. Further, in its sole discretion, MONTAGE may pay any and all persons who have not received payment due in connection with this Subcontract.

4.5 <u>Partial Lien Waivers and Affidavits</u>. When required by MONTAGE, Subcontractor shall provide, in a form satisfactory to MONTAGE and Owner, partial lien or claim waivers and affidavits from Subcontractor and its subcontractors and suppliers for all prior payments to Subcontractor as part of each request for partial payment other than the initial request.

4.8 <u>Right to Withhold Payment</u>. MONTAGE may withhold amounts otherwise due under this Subcontract or due under any other contractual arrangement between the parties to compensate MONTAGE for costs MONTAGE has incurred or may incur for which Subcontractor may be responsible hereunder. Appropriate adjustments to withholding shall be made when the exact amounts owed hereunder are determined with prior notification to the subcontractor.

4.9 <u>Final Payment</u>. Final payment, subject to withholdings permitted hereunder, shall be made after; (1) Subcontractor's work has been completed and approved by Owner; (2) evidence satisfactory to MONTAGE that Subcontractor has satisfied all payrolls, bills for materials and equipment, and all known indebtedness connected with Subcontractor's work; (3) the entire Project is certified complete by the Owner; (4) MONTAGE has received from the sub-contractor a complete set of as build drawings and a certificate of insurance naming MONTAGE as certificate holder.

5. **SCHEDULE OF WORK**

    5.1 <u>Time of Performance</u>. Subcontractor will proceed with all required construction work in a prompt and diligent manner, in accordance with MONTAGE's directives and MONTAGE's schedule, revised if necessary, as the work progresses. **TIME IS OF THE ESSENCE**. Subcontractor shall not be entitled to additional compensation for compliance with schedule revisions, except to the extent that the Contract Documents entitle MONTAGE to additional compensation and such reimbursement is obtained from the Owner. Work to be completed by April 28, 2005.

    5.2 <u>Subcontractor's Schedule</u>. If requested by MONTAGE, Subcontractor shall submit to MONTAGE a detailed schedule for performance of the work, in a form acceptable to MONTAGE, which shall comply with all scheduling requirements of the Contract Documents and of Section 5.1 above. MONTAGE may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

    5.3 <u>Priority of Work</u>. Subcontractor will coordinate its work with the work of MONTAGE, other subcontractors and Owner's other builders, if any, to prevent or mitigate delays or interferences in the completion of any part or all of the Project. MONTAGE shall have the right to decide the time, order and priority in which various portions of the work shall be performed and all other matters relative to the timely and orderly conduct of Subcontractor's work.

6. **SUBCONTRACTOR'S LIABILITY**

    6.1 <u>Scope</u>. Subcontractor shall be liable to MONTAGE for all costs MONTAGE incurs as a result of Subcontractor's failure to perform the Subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors, of any tier to perform. Subcontractor' liability shall include, but not be limited to (1) damages and other delay costs payable by MONTAGE to Owner (2) MONTAGE's increased performance costs, such as extended overhead and increased performance cost resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties, including other subcontractors of MONTAGE; (5) excess costs of re-procurement, and (6) attorney's fees and related costs of resolving disputes with Subcontractor related to Subcontractor' performance.

7. **CHANGES AND CLAIMS**

    7.1 <u>Changes</u>. MONTAGE may, either unilaterally or by direction of Owner, without notice to sureties make changes in the work covered by this Subcontract at any time. Any changes to the Subcontract shall be in writing and Subcontractor shall perform the work, as changed, without delay. If Subcontractor does not submit a price quotation within seven (7) days to MONTAGE for changes requested by Owner, MONTAGE may use its best estimate of the proposed change as it affects Subcontractor in its quotation to Owner, which estimate shall be the maximum amount due Subcontractor for such work.

    7.2 <u>Claims</u>. Any claims for adjustment in price, time or other Subcontract provisions, shall be submitted to MONTAGE, in writing, in sufficient time for MONTAGE to submit claims to Owner in accordance with the Contract Documents. If directed by MONTAGE, Subcontractor shall certify the completeness and accuracy of its claim as a condition to its consideration by MONTAGE or Owner.

    7.3 <u>Claims Relating to Owner</u>. If Subcontractor submits a claim to MONTAGE arising out of or relating to problems caused by or which are the responsibility of the Owner, Subcontractor agrees to be bound to MONTAGE to the same extent that MONTAGE is bound to Owner by the terms of the Contract Document

and by any and all decisions or determinations made by a Court of the party or board so authorized in the Contract Documents to decide disputes between MONTAGE and Owner, whether or not Subcontractor is a party to such proceedings. MONTAGE shall be liable to Subcontractor for no more than Subcontractor's equitable share of any recovery from Owner. MONTAGE agrees to present to the Owner, in MONTAGE's name, and, if necessary, invoke the disputes provision of the Contract Documents for all Subcontractor's claims for extras and equitable adjustments, timely submitted, whenever the Contract Documents permit MONTAGE to do so, and MONTAGE reasonably believes such claim is valid. Subcontractor agrees to furnish all documents, statements, witnesses and other information required by MONTAGE for investigating and presenting Subcontractor's claims and to pay or reimburse MONTAGE for all expenses and costs including legal fees, if any, incurred in connection with Subcontractor's claims. MONTAGE has final authority to settle all claims submitted to the Owner. No dispute shall interfere with the progress of construction and the Subcontractor shall continue with its work as directed.

7.5 <u>Owner Damages</u>. If the Owner recovers liquidated or other damages against MONTAGE, then MONTAGE may assess against the Subcontractor the portion of the Owner's damages that represent the Subcontractor's share of the responsibility. The amount of such assessment for Owner damages shall not exceed the amount assessed against MONTAGE plus the portion of costs and attorney's fees MONTAGE incurred in defending against the Owner's claim for damages arising out of or in relation to the Subcontractor's work.

7.6 <u>Work Continuation</u>. If any problem or dispute arises between MONTAGE and Subcontractor as to interpretation of the requirements of this Subcontract, which MONTAGE and Subcontractor do not promptly resolve, Subcontractor shall proceed in accordance with the interpretation and direction of MONTAGE and prosecute the work diligently and without delay. Any claims by Subcontractor shall be submitted in accordance with procedures established in Section 7 of this Subcontract. During all disputes, actions at law, suits in equity, claim proceedings, and any other matters in question arising out of, or relating to this Subcontract, the Contract, Contract Documents, or the breach of any of them, the Subcontractor shall carry on the work and maintain progress on completing the Project in accordance with the construction schedule, unless otherwise agreed to between MONTAGE and Subcontractor, in writing.

## 8. <u>INSPECTION AND ACCEPTANCE</u>

8.1 <u>Inspection of Work</u>. Subcontractor shall provide appropriate facilities at all reasonable times for inspection by MONTAGE or Owner of the work and materials provided under this Subcontract, whether at the Project site or at any place where such work or materials may be in preparation, manufacture, storage, or installation.

8.2 <u>Correction of Defective Work</u>. Subcontractor shall promptly replace or correct any work or materials which MONTAGE or Owner shall reject as failing to conform to the requirements of this Subcontract. If Subcontractor does not do so within 3 working days, MONTAGE shall have the right to do so and

Subcontractor shall be liable to MONTAGE for the cost thereof. If, in the opinion of Owner, it is not expedient to correct or replace all or any part of rejected work or materials, then MONTAGE, at its option, may deduct from the payments due, or to become due, to Subcontractor, such amounts as, in OWNER's judgment, will represent: (1) the difference between the fair value of the rejected work and materials and the value thereof, if it complied with this SUBCONTRACT: or (2) the cost of correction, whichever is higher.

8.4 <u>Acceptance</u>. The work shall be accepted by Owner according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or MONTAGE shall not constitute acceptance of the work.

## 9. SUBMITTALS

9.2 <u>Status</u>. Subcontractor shall furnish daily progress reports on its work, including information on the status of materials and equipment under this Subcontract, which may be in the course of preparation or manufacture.

9.3 <u>Confidentiality</u>. Subcontractor stipulates that it will hold in the most strictest confidence and refrain from divulging all information which it may acquire with respect to Montage or its client.

## 10. CLEANUP

Unless MONTAGE otherwise directs or agrees, Subcontractor shall, at its own expense, clean and remove from the Project all rubbish and debris resulting from the performance of its work and, at the completion of its work in each area of the Project, perform such cleaning as may be required. Such removal shall be done in a manner that will impede neither the progress of the Project nor other trades.

## 11. LAWS, PERMITS, FEES AND PATENTS

11.1 <u>Compliance</u>. Subcontractor shall give all notices and comply with all laws, ordinances, rules, and regulations bearing on the performance of its work on the Project. Subcontractor shall secure and pay for all licenses, and arrange inspections necessary for the proper execution and completion of Subcontractor's work. Subcontractor shall be duly licensed to operate under the laws of the applicable jurisdictions.

11.2 <u>Hold Harmless</u>. Subcontractor agrees to hold MONTAGE harmless against the payment of any and all losses, costs, expenses, contributions, taxes, or premiums which may become due or payable under Federal, State or local laws arising out of Subcontractor's failure to comply with the laws outlined in Section 11.1 above, including any interest or penalties. Subcontractor waives any and all claims for additional compensation because of any increase in taxes, contributions or premiums unless Owner pays MONTAGE such increases incurred by Subcontractor.

## 12. HEALTH AND SAFETY

12.1 <u>Responsibility of Subcontractor</u>. As relates to the Subcontractor's work, Subcontractor is responsible for the safety of the general public or workers engaged on or in the vicinity of the Project. Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices, and requirements concerning safety, as shall be applicable to the work.

12.2 <u>Stoppages Ordered by MONTAGE</u>. When so ordered by MONTAGE, Subcontractor shall stop any part of the work which MONTAGE deems unsafe until corrective measures, satisfactory to MONTAGE, have been taken, and Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should Subcontractor neglect to take such corrective measures, MONTAGE may do so at the cost and expense of Subcontractor and may deduct the cost thereof from any payments due or to become due to

Subcontractor. Failure on the part of MONTAGE to stop unsafe practices shall not be deemed an acceptance or acquiescence by MONTAGE of Subcontractor's means or methods of construction and shall in no way relieve Subcontractor of its responsibility.

12.3 <u>Hazardous Material</u>. In the event the Subcontractor encounters, on the Project, material reasonably believed to be a hazardous substance such as, but not limited to, asbestos or polychlorinated biphenyl (PCB) which has not been rendered harmless, the Subcontract shall immediately stop work in the area affected and report the condition to MONTAGE in writing. The work in the affected area shall not thereafter be resumed except by written agreement between MONTAGE and Subcontractor if, in fact, the material is a hazardous substance, such as asbestos or PCB, and has not been rendered harmless. The work in the affected area shall be resumed in the absence of hazardous substances or when it has been rendered harmless pursuant to an equitable adjustment issued in accordance with Section 7 of the Subcontract.

13. **REPRESENTATION, INTERPRETATION AND INVESTIGATION**

13.1 <u>Representations and Investigation</u>. Subcontractor represents that it is fully qualified to perform this Subcontract. Subcontractor acknowledges that prior to the execution of this Subcontract, it has: () by its own independent investigation ascertained: (1) the work required by the Subcontract; (2) the conditions involved in performing the work; and (3) the obligations of the Subcontract and the Contract Documents; and (b) verified all information furnished by MONTAGE or others and satisfied itself as to the correctness and accuracy of that information. Any failure by the Subcontractor to independently investigate and become fully informed will not release Subcontractor from its responsibilities under this Subcontract.

13.2 <u>Interpretation</u>. The terms and provisions of this Subcontract with respect to the work on this Project to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any terms and provisions of the Contract and Contract Documents. The parties intend that all terms of this Subcontract, the Contract and Contract Documents are to be considered as complementary. However, in the event of a conflict between or among the terms of this Subcontract, the Contract or the Contract Documents, the higher standard or greater responsibility for Subcontractor shall prevail.

13.3 <u>Inconsistencies and Omissions</u>. Should inconsistencies or omissions appear in the Contract Documents, the Subcontractor shall notify MONTAGE and identify the inconsistency or omission, in writing, within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of Subcontractor's Notice, MONTAGE shall instruct the Subcontractor as to the measures to be taken, if any, and the Subcontractor shall comply with MONTAGE's instructions.

13.4 <u>Field Measurements</u>. Notwithstanding the dimensions given on the plans, specifications and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will ensure the proper matching and fitting of the work covered by this Subcontract and contiguous work.

14. **TERMINATION FOR CONVENIENCE**

14.1 <u>Contractor's Right to Terminate</u>. MONTAGE shall have the right to terminate this Subcontract, without cause, for convenience, when MONTAGE determines that it is in its own best interests to so terminate the Subcontract. If this Subcontract is terminated for convenience, Subcontractor shall comply with all of MONTAGE's termination instructions and shall be entitled to receive payment for work actually performed and a reasonable overhead and profit in connection with such work, except that if MONTAGE's Contract with Owner is also terminated for convenience, termination settlement and costs to Subcontractor shall be as

provided in the Contract Documents, and in the amount actually received by MONTAGE from Owner. Subcontractor shall not be entitled to any recovery of profit or unabsorbed overhead in connection with work not actually performed or future work.

14.2 **Subcontractor's Right to Terminate.** The Subcontractor may terminate this Subcontract if its work on the Project is stopped for a period of thirty (30) days, through no act or fault of the Subcontractor or a sub-subcontractor or their agents or employees or any persons or other entities performing portions of the work under contract with the Subcontractor, because MONTAGE has persistently and repeatedly failed to fulfill its obligations under this Subcontract with respect to matters important to the progress of the Subcontractor's work on the Project, upon seven (7) additional days written Notice to MONTAGE. In case of termination of this Subcontract by Subcontractor, the Subcontractor shall be entitled to be paid as if MONTAGE had terminated Subcontractor pursuant to Section 14.1.

15. **SUBCONTRACTOR'S FAILURE OR INABILITY TO PERFORM**

15.1 **Causes for Termination.** If, in the opinion of MONTAGE, Subcontractor shall, at any time: (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality: (2) fail in any respect to prosecute the work according to the current schedule: (3) cause, by any action or omission, the stoppage or delay of, or interference with, the work of MONTAGE or of any other builder or subcontractor: (4) submit a false or misleading lien or claim waiver: (5) fail to make payments to sub-subcontractors, employees and suppliers, or (6) otherwise fail to comply with all provisions of this Subcontract or the Contract Documents then, after serving three (3) days written Notice, unless the condition specified in such Notice shall have been eliminated within such three (3) days, MONTAGE, at its option:

a. Without voiding the other provisions of this Subcontract and without notice to the sureties may take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to MONTAGE for all consequent cost, plus interest, and reasonable attorney's fees thereof:

b. Terminate the Subcontract for default: or

c. Seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to MONTAGE and/or Owner.

15.2 **Demand for Assurance.** In the event MONTAGE becomes concerned about Subcontractor's ability to continue performance, MONTAGE may demand adequate assurance from Subcontractor or its successors in interest of timely future performance of the Subcontract. Failure to comply with such a demand within ten (10) days of receipt of the demand shall entitle MONTAGE to terminate Subcontractor for default. The Subcontractor shall immediately notify MONTAGE if Subcontractor learns or in any way has reasonable cause to suspect that the Subcontractor or any of its sub-subcontractors at any tier has incurred or shall incur a change in its financial condition which would adversely affect the Subcontractor's ability to perform under this Subcontract or any sub-subcontractor's ability to perform under its sub-subcontract with the Subcontractor.

15.3 **MONTAGE's Rights Upon Termination for Default.** In the event of termination for default under Sections 15.1 and 15.2 above, MONTAGE may, at its option: (1) enter on the premises and take possession, for the purpose of completing any work, of all materials and equipment of Subcontractor: (2) require Subcontractor to assign to MONTAGE any or all of Subcontractor's subcontracts and purchase orders involving the Project: or (3) either itself or through others complete the work by whatever method MONTAGE may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner. At such time, if the unpaid balance of the price to be paid

exceeds the expense incurred by MONTAGE, such excess shall be paid by MONTAGE to Subcontractor. If such amount due MONTAGE shall exceed such unpaid balance, then Subcontractor shall pay MONTAGE the difference and reasonable attorney's fees.

15.4 **Recourse Against MONTAGE.** If MONTAGE wrongfully terminates Subcontractor, MONTAGE shall be liable to Subcontractor for the costs MONTAGE would have paid if MONTAGE would have terminated Subcontractor for convenience. Subcontractor's remedy hereunder shall be exclusive. Nothing hereunder shall prevent MONTAGE from withholding monies from Subcontractor under other provisions of the Contract Documents.

16. **WARRANTY**

16.1 **Scope of Warranty.** Subcontractor warrants to the Owner and MONTAGE that all materials and equipment furnished shall be new, unless otherwise specified, and that all work under this Subcontract shall be of good quality, free from faults and defects and in strict conformance with the Contract Documents. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. This warranty shall be in addition to, and not in limitation of, any other warranty or remedy required by law or by the Contract Documents.

16.2 **Term.** Subcontractor warrants its work for the same period as MONTAGE warrants the work to the Owner under the Contract Documents. If the Contract Documents do not state a specific warranty period, the Subcontractor warrants its work until proper germination is established. After such, the Owner will be responsible for continued care.

17. **INSURANCE**

17.1 **Policies.** Before commencing the work, Subcontractor shall procure and maintain at its own expense until final acceptance of the work, upon all of its operations and the operation of any of its subcontractors, suppliers or material men on the Project hereunder, adequate policies of insurance with MONTAGE, as additional insured parties. All policies will waive Rights of Subrogation against MONTAGE and Owner of Project.

a. **Worker's Compensation and Employer's Liability Insurance.** Subcontractor shall procure and maintain Worker's Compensation and Employer's Liability Insurance covering all of its employees in conformance with the laws of the state in which the work under the Contract Document is to be performed.

b. **Comprehensive or Commercial General Liability.** Subcontractor shall procure and maintain coverage to include all operations of the Insured under the Contract Documents and coverage for all liability assumed hereunder. Coverage to be on Occurrence Form. Claims Made form **is not** acceptable. Coverage to include: Premises Operations (including X-Explosion, C-Collapse, and U-Underground coverages as applicable): Independent Contractor's Protective: Personal Injury Liability with Employee Exclusion deleted: Contractual, including specified provisions for Contractor's obligation: Broad Form Property Damage, including Completed Operations with the following limits:

c. **Comprehensive Automobile Liability.** Subcontractor shall procure and maintain Comprehensive Automobile Liability Insurance covering owned, non-owned and hired motor vehicles.

17.2 **Notice and Right to Pay Premiums.** Subcontractor shall provide MONTAGE with copies of certificates of insurance coverage and proof of payment of all premiums. Insurance policies shall provide for

notification to MONTAGE of non-payment of any premium and give MONTAGE the right to make the premium payment thereunder within a reasonable time. Any premium payments made by MONTAGE shall be deducted from amounts due Subcontractor under this Subcontract. Insurance policies shall provide for thirty (30) days prior written Notice to MONTAGE of cancellation.

18. **INDEMNIFICATION**

18.1 Subcontractor's Performance. to the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, MONTAGE (including its affiliates, parents and subsidiaries) and other contractors and subcontractors and all of their officers, directors, agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, rising out of or resulting from the performance of the Subcontractor's work provided that: (1) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor of anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder, and (2) such obligation shall not be constructed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Section 18.

18.2 No Limitation Upon Liability. In any and all claims against the Owner, MONTAGE (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their officers, directors, agents or employees, by any employees of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Section 18 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's or Workmen's Compensation Acts, disability benefit acts or other employee benefit acts.

19. **LABOR POLICY**

19.1 Project Personnel. Subcontractor and its sub-subcontractors or suppliers shall not employ anyone engaged in Subcontract work whose employment may be objected to by MONTAGE or Owner.

19.2 Work Stoppage. Should any workers performing work covered by this Subcontract engage in a strike or any other stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the work on the part of the Subcontractor due to the conditions and terms set forth in Section 15.

19.4 Legal USA Residents. By U.S. Law, Subcontractor and sub-subcontractors are required to only utilize personnel who are legal residents of the United States and that have been issued a work permit by the INS.

20. **ASSIGNMENT AND SUBCONTRACTING**

20.1 Assignment. Subcontractor agrees that it will not transfer, assign or delegate the Subcontract, or any payment due thereunder, without the written prior consent of MONTAGE, which consent shall not be unreasonably withheld.

20.2 <u>Subcontractors</u>. The Subcontractor shall not subcontract the whole or part of this Subcontract without the prior written consent of the Contractor. Subcontractor agrees that all sub-subcontractors and lower-tier suppliers and subcontractors will be subject to all terms and conditions of this Subcontract and the Contract Documents. MONTAGE's consent to any subletting shall not be deemed to create any contractual relationship between MONTAGE and any sub-subcontractor or supplier to whom the work or any portion thereof is sublet.

20.3 <u>Additional Information</u>. At MONTAGE's request, the Subcontractor shall promptly deliver to MONTAGE accurate lists of all sub-subcontractors and suppliers retained in connection with the Project, as well as copies of all contracts with such parties. MONTAGE shall have the right to contact such sub-subcontractors and suppliers to verify any matter related to the Project and this Subcontract.

21. **PRIVITY**

Until this Subcontract is complete and final payment is made, Subcontractor shall not, without the written consent of MONTAGE, perform any work directly for Owner or the Owner's tenants. Subcontractor agrees that all work on this Project shall be handled and processed by MONTAGE and that Subcontractor will not communicate directly with the Owner's representatives without MONTAGE's consent.

23. **ARBITRATION**

23.1 <u>Agreement to Arbitration</u>. Subject to Section 7.3 entitled "Claims Relating to Owner", unless the parties mutually agree otherwise, or the Contract Documents state otherwise, all claims, disputes and matters in question arising out of, or relating to, this Subcontract, of the breach thereof, shall be decided by arbitration, which shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.

23.2 <u>Notice of Demand</u>. Notice of a demand for arbitration shall be delivered, in writing, to the other party to this Subcontract and shall be filed with the Washington, D.C. Office of the American Arbitration Association. A demand for arbitration shall be made within a reasonable time following written Notice of the claim, dispute or matter in questions.

23.4 <u>Award</u>. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

23.5 <u>Work Continuation and Payment</u>. Unless the parties mutually agree otherwise, Subcontractor shall carry on its work pending arbitration. If Subcontractor carries on its work and otherwise complies with the Subcontract, MONTAGE shall continue to make progress payments in accordance with this Subcontract.

25. **NOTICE**

All Notices shall be addressed to the parties at the addresses set out herein and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

26. **ADVERTISING**

Subcontractor shall not place any signs, billboards or posters on any portion of the Project site, building property or fences (temporary or permanent) surrounding the same, except upon prior written permission

received from MONTAGE, and then only of a size, material, color and type and at a location approved by MONTAGE.

27. **SEVERABILITY AND WAIVER**

The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or rights as respects further performance.

28. **COMPLETE AGREEMENT**

This Subcontract is solely for the benefit of signatories hereto and represents the entire and integrated agreement between the parties hereto, and supersedes all prior negotiations, representations, or agreement either written or oral.

29. **TITLES**

The titles given to the Sections of this Subcontract are for ease of reference only and shall not be relied upon or cited for any other purpose.

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, have hereunto executed this Subcontract on the day and year above written.

By: _____

Montage, Inc.     Date: 5/2/05

Print Name: Nada

Title: CFO

Witness: _____

_____ Date: March 9-2005

Print Name: Jackie Carlson

Title: Pres

TLC Fine ___

___ Corp ___